By the Court. Bosworth, J.
The construction given to this policy by the charge to the jury, treated it as a policy upon freight as an integral subject, and not upon the several items of freight upon the distinct and separate parts of the cargo shipped by different shippers. The freight insured was treated as a totality, and the jury were instructed, that, if the undamaged goods, instead of being transhipped in other vessels, had been retained and carried on in the St. Patrick, “there could be no recovery in this action; the ship would then have earned a part of her freight, and there could not have been a total loss.”
The defendants, upon this motion, are entitled to a just and full application of that rule of construction. It was one for which they contended at the trial, and the plaintiff, instead of controverting or excepting to it, sought to bring himself within it, by showing a loss of freight on every part of the cargo, total in judgment of law.
The jury were also instructed that “there was no right to abandon the voyage on account of the injury to the ship.”
The opinion delivered in the Court of Appeals states that “ there was no obligation to abandon the voyage, nor had the assured, or their agent, a right to do so, by reason of the injuries sustained by the vessel, unless they extended to at least one-half of her value.”
It is proper to observe here that the cause was before that court on a demurrer to the declaration, which admitted the facts stated in the latter to be true. How far the facts established at the tidal correspond in substance and effect with those which the Court of Appeals regarded as admitted by the *214 demurrer, it may be necessary to consider, in respect to some of the points made and argued in this motion.
The opinion referred to further states, that “ the declaration contains, in general terms, a sufficient allegation of an abandonment-of the voyage, and a consequent loss of freight within the terms of the policy. It would, nevertheless, be invalid, if the statement of the particulars of the loss showed that such loss was in fact partial.”
The opinion of that court, and the charge to the jury, concur in the proposition, that the assured had no right to abandon the voyage, by reason of the injuries sustained by the vessel.
It must be also taken as true, that the ship was repaired, and sailed within a reasonable time for the original port of destination ; and was repaired with a view to obtain and carry, and did carry a full cargo on freight to that port, from the port of necessity at which the repairs were made. She might have retained, and carried forward the undamaged goods. And the jury were instructed that, if she had retained and carried them forward, the loss of freight would have been partial, and not actually total, and no recovery could have been had in this action.
If this view be correct, and if the true rule as to the undamaged goods was stated to the jury, then it follows that, on the state of facts then existing, it depended entirely on the arbitrary volition of the assured whether the loss should be absolutely total or only partial, and not upon the question whether he had been prevented by the perils insured against, from entitling himself to the freight of some part of the cargo.
He had no right to abandon the voyage on account of the injuries to the ship. Those injuries were repaired, with the view of going to, and she did within a reasonable time sail for, the original port of destination, and carried and delivered a full cargo at that port. She could have carried these goods; and had she carried them, there could have been no recovery by the plaintiff. Freight might have been earned by carrying them in this ship.
The election to not so carry them, it is claimed, subjects the defendants to a liability for the amount insured; while an elec *215 tion to so carry, and having thus carried them, would have exonerated the defendants from all liability.
The practical question, as the cause was submitted to the jury, is this: Does, or can the liability of the defendants be made to depend upon the will of the assured, or does it depend upon facts, irrespective of what his will or election may be, with reference to such facts?
To answer this question understandingly, it is important to ascertain what is the precise nature of the contract of insurance on freight. Where the insurance is against actual total loss only, it is an undertaking that if the shipowner is prevented from earning any freight by any of the perils insured against, the underwriters will make good the loss on freight to the amount of their subscription.
In the case of a valued policy on freight, and an actual total loss, the underwriters, as a general rule, must pay the sum named in the policy.
But the underwriters do not contract that the voyage shall yield a profit to the assured, nor that it shall not cost him more to deliver the cargo, according to the terms of the bills of lading, than the aggregate gross amount of freight payable on the delivery of the cargo, or the sum named in the policy as the measure of the underwriters’ liability in the case of total loss.
They contract that a technical total loss of the vessel shall not be occasioned during the voyage by any of the perils insured against; or, such an event not happening, that the assured shall not be prevented by such perils from transporting and delivering some part of her cargo, in specie, at the port of destination.
If the perils insured against have neither caused a technical' total loss of the vessel, nor prevented the carrying and délivery of some part of the cargo in specie, so as to entitle the assured to freight, then the underwriters are not liable, for the reason that some freight has been earned, or might have been, if the assured, or their agents,'had performed their duty. And they cannot make their omission to perform their duty the ground of liability on the part of the underwriters.
The underwriters do not undertake to indemnify them against a loss of freight resulting from the non-performance of duty, but only against an actual total loss of freight, which the perils *216 insured against shall have prevented them from earning. With the cost, to the assured, of earning it, the underwriters have no concern.
To avoid misconstruction, it is proper to remark, that by the cost of earning freight, it is not intended to intimate that the proportion of losses arising from the perils insured against and forming a subject of general average, properly chargeable on freight, is a matter that does not concern the underwriters, or that it is not to be regarded in determining whether that and other losses chargeable on freight only, may or may not make a case of actual total loss of freight.
When the ship becomes changed, by necessity, during the voyage, and the goods are sent forward by the master in a substituted" ship, in the discharge of a duty for the benefit of the owner of the goods at an increased freight, the increased freight is a charge upon the goods, and must be paid by the insurer of X the cargo. (Mumford v. Commercial Ins. Co., 5 L. R. 262; Searle v. Scovell, 4 J. Ch. R. 218; Dodge v. Marine Ins. Co., 17 Mass. 471: Hugg v. Augusta Ins. and Banking Co., 7 How. U. S. R. 695-609.)
Where a ship puts into a port of distress for repairs, and to enable the repairs to be made, the cargo is necessarily unloaded, the charges of unshipping and re-shipping the cargo, will generally fall on the underwriter on freight.
The charges of wages and provisions incident to a delay for repairs, are not chargeable to the underwriter on freight, any more than to an underwriter on the ship.
In England these expenses do not give a claim to either general or particular average. It is a part of the obligation of a shipowner to keep a competent crew on board at his own expense, from the commencement to the end of the voyage. (Jackson v. Charnock, 8 T. R. 209; Plummer v. Wildman, 3 Maule & Selwyn, 482; Power v. Whitmore, 4 Maule & Selwyn, 481.)
Where the damages to be repaired are such as to give a claim to general average, these expenses, by the law of this country, are to be contributed for, as general average. (2d Arnould on Insurance, 914, and cases cited in note 1.)
/ With these qualifications, it may be said, that with the cost I to the assured of earning freight, tiie underwriters have nothing *217 to do, and the amount of such cost does not enter into the consideration whether the latter are or are not liable for an actual total loss of freight./ They do not undertake that the wages of the master and crew, and the necessary provisions for the Amy-age, shall not cost more than the amount of freight to be earned.
/The impossibility of entitling the assured to any freight, arising solely from the perils insured against, is the only event on which the underwriters can be made liable. /
In this case, by the express terms of the policy, it was “ specially agreed, that this company shall not be liable for any partial loss whatever, nor for general average or expense.”
Herbert v. Hallett, 3 J. G. 93, was an action upon a policy on freight, valued at $2,200, from New York to the Havana. The vessel, after encountering a gale of wind, and being driven on shore, Avas obliged to return to New York. The cargo was in part so damaged as to be incapable of being carried to the port of destination.
As to portions of the cargo, it did not appear what became of them. It was the opinion of a shipper of a part of the cargo, who was acquainted with the cargo before the brig sailed, and who received the goods into his store, on their return, that most of the cargo was so much damaged, and the voyage so broken up, as not to be worth pursuing. The vessel was repaired in a reasonable time, and proceeded on another voyage. There was no proof of an abandonment by the plaintiff.
It was held that the assured had no right to recover, as he ought to have insisted on carrying on the goods so as to entitle himself to the freight, and having lost the freight by his negligence or folly, the insurers were not liable.
Kent, J., remarked: “ It appears to me that the same peril,, and to the same extent, ought to exist, to authorize a recovery! on a policy on freight, as on a policy on the ship, and that be-1 fore the insured can recover, in either case, as for a total loss, the ship must be rendered unable to perform the voyage. * * If, in a like case, he could not recover a total loss on a policy! on the ship, I see no good reason why there should be a reco-f very for a total loss of freight. It would involve the absurdity! of assuming, in the one case, that the voyage was lost by the! peril, and in the other, that it was not lost.”
*218 Each of the judges who gave opinions in that case, spoke of the fact that the vessel was repaired at a small expense, but no point was made as to the relative amount of the expense necessary to send forward the undamaged part of the, cargo, and the freight to be earned by carrying that part of the cargo.
The point decided by the' case is, that the ship-owner was not prevented by the perils insured against from completing the voyage, and entitling himself to freight on a part of the cargo, and, therefore, there was not an actual total loss of freight.
Moody v. Jones, 4 Barn. & Cress. 394, was an action upon a policy onfreight of the ship Isabella, from Kingston in Jamaica, to Liverpool. The vessel, after commencing her voyage, was compelled, by injuries arising from the perils insured against, to put back to Kingston for repairs, and to unload the whole cargo. The injuries to the vessel were repaired, but part of the cargo was so damaged that it could not be re-shipped without danger from ignition to the ship and the rest of the cargo, unless it underwent a process of washing with fresh water, and then drying in the sun, which would have detained the vessel six weeks, and been attended with expense equal to the freight. They were sold by the master, who proceeded on his voyage with the rest of the cargo, being unable to obtain other goods to complete his cargo in a reasonable time. He carried with him the proceeds of the damaged cargo, and paid them to the parties interested, without retaining the freight of the goods sold. His proceedings 'in Kingston were found to be such as a prudent man uninsured would have adopted.
The court said: “ It is very proper that the master should exercise a discretion, whether it be more fit to leave the goods behind and give up the value of the freight, than to bring them home. But it by no means follows as a consequence, that if he does, in the sound exercise of his discretion, leave part of the goods behind, and his owner thereby loses freight pro tanto, he can throw the loss on the underwriters.”
In that case it is obvious that the goods could not have been carried forward in their damaged condition. But they could have been restored to a condition in which they might have been carried forward. It would have cost, however, an expense' equal to the freight, besides the delay it would have *219 occasioned to the voyage. The expense, however, would have occasioned, practically, a total loss of freight on this part of the cargo, if there can be said to be a total loss, because it costs the amount of it to earn it. But there was no loss of freight, if by that be meant merely an impossibility of entitling the ship-owner to it, arising from the perils insured. against. In the latter sense there was no loss of freight, and the court held the plaintiff not entitled to recover. The master failed to earn it, by electing not to earn it. ‘ The ground of his so electing was, that to earn it would not yield a profit to the ship-owner. He was not prevented by the perils insured against from earning it, and hence the underwriters were not liable. With the mere cost of earning it they had nothing to do. Such a consideration formed no part of the terms or conditions of théir contract. (1 Wood & Rob. 103; Brockelbank v. Sugure, 1 B. & Ad. 81, for the terms of the policy.)
It may probably be now regarded as settled law, that where the cargo is necessarily unloaded at an intermediate port in the course of the voyage, for the repairs of the ship, and on survey is found to be so sea-damaged that it must inevitably perish from putrefaction, before it can be carried to the port of destination, it may be justifiably sold, and the underwriters are liable for an absolute total loss of freight. This is on the principle that the earning of freight has become an absolute impossibility by reason of the perils insured against. (Roux v. Salvador, 3 Bing. N. C. 266; 7 How. U. S. R. 595.)
The right to insist that there was a total loss of freight upon the undamaged goods would have necessarily been the same as to the whole cargo, if all had been undamaged, and could have been sent forward, and had been sent forward by the master at the same increased freight, “ if the expenses of the ship, such as wharfage, pilotage, labor, wages, provisions, and other charges on freight, which would need to be incurred in sending forward the goods, would have exceeded the freight on the whole cargo.”
In such a case, whether it would be wise or foolish for a merchant to send on his goods, if the master insisted on his right to retain and forward them, or to be paid his full freight, is a question which cannot affect the relative rights of the *220 assured and the underwriters on freight—the latter of whom can never be justly made responsible for any loss on freight, arising from the neglect or laches of the assured, or of the master as his agent. (1 J. R. 205; N. and L. Griswold v. N. Y. Insurance Co., 3 id. 321, S. C.)
In the latter case, the question was discussed and decided, whether the fact that the value of the damaged cargo would not have been worth the amount of the freight at the port of delivery, would justify the assured in abandoning the voyage, and entitle them to recover for a total loss. The court said that “ whether it would have been wise or foolish in the shippers to have sent on the flour in the condition it was in, was a question not to be put by the plaintiffs. It was none of their concern. The risk of the value of the cargo at the port of delivery lay with the owners of the cargo. All that the plaintiffs had to do by their contract was to .provide the means to take on the cargo, by repairing their ship, or procuring another.
If the damage done to the ship can be repaired within such time as not to spoil the goods by the delay, the master is bound to repair, and has a right to detain the cargo a reasonable time, until such repairs are finished, unless the full freight is tendered by the shipper of the goods. (Clark v. Mass. F. and M. Ins. Co., 2 Pick. 104.)
If the master waives his right to insist on the full freight, but instead thereof, permits the shipper to take his goods away, and forward them in another ship, the ship-owner cannot avail himself of the master’s laches, and recover* as for a total loss against the underwriters on freight. (3 J. C. 93; 3 J. R. 421; 2 Pick. 104; Hugg v. Augusta Ins. and Banking Co., 7 How. U. S. 595.)
Jordan v. Warren Ins. Co. (1 Story C. C. R.) was a case of insurance on freight, on a voyage at and from New Orleans to Havre. The vessel was compelled to put back to New Orleans, in consequence of injuries from the perils insured against. Tie cargo, consisting principally of cotton, worth about $60,000, was so much damaged, that it would have required some six months to dry, sort, and repack it, and put it in a condition for commercial purposes. The whole cargo was worth $71,000. *221 The damaged part was sold for $19,744T2„2o. The residue, heing in a sound state, and worth about $2,210, was shipped for Havre in another vessel. The injury occurred on the 7th of June, and the vessel was repaired and fitted for sea before the 21st of July following; and on that day sailed with a new cargo for England, landed that cargo, and earned the freight. A total loss on freight was claimed, but it was decided that the plaintiff was not entitled to recover.
Justice Story said: “The ship was repaired, and capable again of taking on board the cargo at New Orleans within a reasonable time. The master had a right to require that it should be so taken on board, and carried on the voyage, as soon as it should be in a condition to be safely reshipped. He had a right to wait until the cargo could be dried, sorted, repacked, and prepared for reshipment. The delay arising thereby would be a mere retardation, or temporary interruption, or suspension of the voyage, and not an utter prostration or destruction of it. If, then, the freight has been lost, it has been lost by his own voluntary act, and not by the necessary operation of any of the perils insured against.”—(P. 351.) * *
“ It has been suggested that the time of the detention to refit was longer than the actual voyage to Havre, and, therefore, that the master might reasonably refuse to proceed on the voyage. But the underwriters take upon themselves no risk whatever as to the length or duration (and it might be added, or of the cost) ‘ of the voyage insured.’ What they undertake is, that, notwithstanding any of the perils insured against, the ship shall be capable of performing the voyage, so as to earn the freight insured; not that the voyage shall be performed in a longer or shorter period, or at a cost less than the freight to be earned.” “ The owner takes upon himself the chances of a short, or of a protracted passage, of a profitable or of a losing voyage.”
(Anderson v. Walter, 2 Maule & S. 240; Eruth v. Smith, id. 278; Benson v. Chapman, 6 Mann. & Granger, 792, and the judgment of the Court of Exchequer on reversing it, as stated in Arnold on Insurance, Perkins’s ed., vol. 2, p. 1143 [marginal] ; id., pp. 1042 to 1052, and 1136 to 1139, and cases there cited.) (Á ÜJJñ L Ot (
*222 The cases seem to establish the proposition that, in an insurance on freight against actual total loss only, the underwriters are not liable, where the vessel is not so injured as to amount to a constructive total loss, and the cargo is not so injured as to prevent some part of it from being carried and delivered at the port of destination. In this case, a part of the cargo might have been retained and carried forward in the St. Patrick, the freight on which amounted to £251 16s. 5d. The value of this part of the cargo is not stated, but it consisted of 153 bales of cotton, 231 bbls. of turpentine, a lot of headings and shooks for casks, 197 tierces and 100 half-barrels of beef, 17 hogsheads, 1 tierce, and 254 barrels of pork.
The freight on this was actually earned by the transhipment and delivery of this part of the cargo, by the assured, or their agent. The only ground on which an actual total loss of this freight is claimed is, that it cost more than its amount to earn it; and' that in the intendment of the assured the voyage was abandoned, which was commenced on the 6th of October, notwithstanding the vessel was repaired in a reasonable time, with a view to proceed to the original port of destination, and did so proceed with a full cargo, and earn and receive freight.
It is confidently believed that no authority can be found to support the proposition that, in the case of an insurance against actual total loss only, the underwriters can be made liable on the ground that injuries from the perils insured against have caused so much damage to the cargo, that it will -cost more to put it in a condition to be reshipped and carried forward, than the amount of the freight payable on its delivery, where the vessel can be repaired in a reasonable time to prosecute the voyage, and at a cost which makes it the duty of the assured to repair her.
It has already been observed that the learned judge, who gave the only opinion pronounced when this cause was before the Court of Appeals, regarded it as a fact admitted by the demurrer, that there was an absolute “ relinquishment of the voyage, and not a mere intermission, or suspension of it, for the purpose of repairs.” But he also said that there was no right to relinquish it by reason of the injuries sustained by the vessel, unless they extended to at least one-half of her value. *223 They did not equal a quarter of one-half of her value, and, therefore, if there was a pretended abandonment of the voyage, it was not rightful as between the assured and the underwriters, if abandoned merely on account of the injury to the vessel.
It has also been noticed that that opinion proceeds on the ground, that the insurance was not on the whole freight, of the whole cargo, as an integral subject, but on each of the items of freight payable on the delivery of the distinct portions of cargo shipped.
Even if that be a correct exposition of the nature of this policy, the defendants on this motion are entitled to have it regarded as an insurance on the whole freight as a totality. Such was the rule declared at the trial, and to hold otherwise now, would deprive the defendants of the benefit of an exception, which they might have taken to such a ruling, if it had been made at the trial.
The learned judge whose opinion has been adverted to, throughout the opinion, and in considering the statements made by the declaration and admitted by the demurrer, as to the fate of the different portions of the cargo, treated the voyage as having been actually and absolutely abandoned, by injuries to the vessel, susceptible of being proved, under the allegations in the declaration, to amount to a constructive total loss of the vessel. In treating of the question whether there was a total loss of freight on the jettisoned goods, he says: “In this case, however, the assured never had any valid claim to a contribution for the loss of freight on the jettisoned goods, for two reasons: first, no freight fro raid itmeris had been earned; and secondly, the ship never proceeded to her port of destination.”
Contrary to the allegation admitted by the demurrer, it appeared on the trial, that the ship was not only repaired in a reasonable time, at a small expense, but in point of fact did proceed to her port of destination, with a full cargo, the freight on which was over $10,000, while the original freight list was but a little over $8000, and delivered the new cargo and received the higher freight.
He adopts the rule laid down in Abbott on Shipping, that *224 “ if part of the cargo be thrown overboard for the necessary preservation of the ship, and the remainder of the goods and the ship afterwards reach the place of destination (or delivery), the value of this part is to be answered to the merchant by way of general average, and the value of the freight thereof allowed to the owner.”
He adds : “In the case under consideration, the vessel never reached any port of rightful or actual delivery, or a port of discharge.”
How far this fact, assumed to be admitted by the demurrer, affected, in his judgment, the merits of the question, it is not proper to undertake to say.
But inasmuch, as on the facts proved on the trial, that opinion holds that the voyage could not be rightfully relinquished, and as it was shown that the ship did actually repair in a reasonable time and sail for and safely reach her port of destination with a fall cargo, at an increased freight, it may be justly said that nothing in that opinion controverts the proposition, that in judgment of law, the voyage was not abandoned, but on the contrary was actually performed, and the assured earned and received full freight.
The policy, on the sixth of October, 1846, attached upon the freight on a voyage at and from New York to Liverpool. It is by no means a clear proposition that it attached to the freight on that particular cargo with which the ship sailed, in such a sense, that the underwriters would be liable if that cargo was wholly lost, provided the vessel actually completed the voyage with a full cargo, and earning full freight. (1 Story C. C. R. 350-351; 2 Maule and S. 278, 284, 286, and Barclay v. Stirling, 5 id. 6.)
With respect to the goods which were so damaged that they were sold, it appeared at the trial, that the assured, in paying over the proceeds of this part of the cargo to the owners of it, by arrangement with them retained half of the freight on the condition that if he recovered in this suit, he was to pay the amount retained for freight to the owners of the goods sold, and if he failed in this action it was to be in full satisfaction of his freight on that part of the cargo. The amount so retained was $2,495.81. He has actually earned and received so much *225 freight on the damaged goods, unless the judgment of the law is that the loss was actually total, then he is to pay this over, and will not have earned any freight.
This fact did not appear in the case as it was presented to the Court' of Appeals, and what that court would deem its legitimate effect, upon the rights of these parties, is not intimated in the opinion referred to.
It is quite obvious that very important facts were established at the trial, directly opposite to those which the Court of Appeals deemed to be admitted by the demurrer, and the case as it is now presented cannot be regarded as having been passed upon by that court.
One important question undoubtedly is: Is this policy one upon the whole freight as an integral subject, or is it one upon the items of freight upon the distinct shipments of cargo ?
■ At the trial, the former was held to be its true construction. It is a valued policy, without prejudice to prior or subsequent insurance on actual freight. Thefreight was valued at §10,000, and the “ policy proof of interest.” By the policy the defendants were not to be liable for any partial loss whatever, nor for general averages and expenses.
It would seem to have been the obvious intention of the parties, that the defendants were to pay the stipulated sum in case of a constructive total loss of freight on that voyage by the perils insured against, and that there was to be no liability, unless the assured was prevented by the perils insured against from entitling himself to any freight.
I deem the following propositions free from reasonable doubt:—
The injuries to the ship did not amount to a constructive total loss of the ship, and the plaintiffs had no right to abandon the voyage on that account.
The ship was repaired within a reasonable time for resuming and completing her voyage. She was repaired with a view to, and did proceed to her original port of destination. It was the right of the plaintiffs to have retained the undamaged goods, and carried them forward in this ship. Had they done so, there could have been no recovery in this action, for the reason that some freight would have been earned. Their not earning it, *226 resulted from their own voluntary act, and not from the perils insured against, and therefore the underwriters are not liable.
That although injuries may arise from the perils insured against, which make it cost the assured more to earn the freight, than the amount of the freight, yet if they do not disable him from earning freight, the underwriters are not liable. They undertake nothing in respect to the profitableness or duration of the voyage. Their liability does not depend upon and cannot be affected by either of those considerations.
They merely contract that the assured shall not be prevented by the perils insured against from earning any freight, and if he is, they will pay, in case of a valued policy like this, the sum at which it is valued.
If these propositions are correct, the verdict cannot be sustained, but must be set aside, and a new trial granted.
As to some of the other propositions discussed on the argument, there is more room for doubt.
I think, that in judgment of law, the voyage commenced in October was completed. The ship was repaired with an actual intent, at the time of repairing her, of proceeding to the original port of destination. She was so repaired, and sailed for it, within a reasonable period for resuming the voyage. She carried a full cargo, and earned and received,the freight of it. Whether mentally abandoned or not, it was actually completed. The freight of a full cargo, on that voyage, was earned. (1 Story’s C. C. R. 350, 351; 2 Maule & Selwyn, 278; Stirling v. Barclay, 5 id.)
In the latter case there had been an abandonment to the underwriters on freight, and the question was, whether the latter were entitled to the freight of new cargo taken on board at an intermediate port, a port of necessity. It was held that it was freight earned during the voyage, and would be covered by the policy, and being such they were entitled to it. It would seem to follow that if the insurance had been against actual total loss only, the earning of such freight would exempt the underwriters from liability.
Freight upon the damaged goods was paid to the amount of $2,495.81.
The plaintiff was allowed to retain this sum out of the pro *227 ceeds of the sales of the damaged goods, upon his assertion of a claim to full, or some freight, as a matter of right. He was allowed to retain it as a satisfaction of his claim to such freight. It does not depend upon the will of either of the parties to that arrangement, whether he shall keep it or not. But by the arrangement between them it is unconditionally his, unless this court decides that notwithstanding that arrangement, there was a total loss of freight on the part damaged, which he might, but preferred not to, entitle himself to. ' If the court decides that the freight on the undamaged goods was lost by his own voluntary act, and not by the perils insured against, and that, therefore, the defendants are not liable, then he has received, besides the freight on those goods, $2,495.81, paid to him as freight, on a claim of freight actually earned by him on that voyage, and in satisfaction of such claim.
The rule seems to be that the freight, which but for the jettison the ship-owner would have received for the goods jettisoned, must be made good to him by a general average contribution. (Phillips on Ins. 91; Benecke’s Pr. of Indem. 178; Columbian Ins. Co. of Alexandria v. Ashly et al., 13 Peters, 344.)
We all concur in the opinion that there should be a new trial, on the grounds that the freight on the undamaged goods was not lost by the perils insured against, but by the voluntary act of the assured; and that the policy was a policy on freight as a totality.
These points being of themselves sufficient to dispose of the case, as it is presented by the bill of exceptions, it is unnecessary for the court, and it does not intend to express a definite opinion upon the other questions arising upon it.