By the Court.—Curtis, J.
The contract on the ■part of the underwriters, was that the ship should not he prevented by the perils of the sea from earning freight money for the owners. - The ship was hopelessly stranded three or four miles from the port of delivery, :a port then infected with yellow fever. The expense ■of delivering the portion of the cargo rescued amounted to more than the freight upon it. The master was lost at the time of the wreck. The owners, on receiving notice, applied to the insurers, and were told that on account of the yellow fever it would be impossible to get an agent to go down there, that they had better telegraph to Mr. Stackpole, the consignee of the cargo, to find out the condition of the vessel, and to advise with Mr. Hunt, the underwriters, or their agent at ■Galveston, and to take at least a fifty per cent, average bond. This was done, and Mr. Hunt directed the vessel to be turned over to him as the agent of the underwriters. The vessel was, as the witness Stack-pole testifies, abandoned to him as such agent, and it appears that all the subsequent steps in respect to saving cargo, and delivering and selling same, and collecting the freight upon the portions delivered, were ■performed by him, or by his direction, acting in such ■capacity.
It is claimed by the defendant, that what was thus said on the part of the defendant was unimportant, and did not purport to take away power or responsibility from the ship owner or agent, and that it was merely the recommendation of a known person to advise with. In passing upon this, the peculiar character of the emergency has to be considered. There was no master surviving whose duty it was to have acted for, and advised the parties interested. Ho agent could be sent there in consequence of the prevailing infection, and when the insurers, under such circumstances, referred the owners to their a;:erU to advise with, it *454 can hardly be deemed that snch a recommendation is unimportant when acted upon as was done in this case, and resulting in the transfer of property and money to their agent, and for their benefit.
It is true, the recommendation does not, upon its face, purport to take away power or responsibility from the shipowners, but the construction of it is to be measured by the interpretation, the parties to the suit, the underwriters, and the owners put upon it, and how far they respectively acted upon it and were benefited by it, and to what extent it was adopted and ratified at the time and in the emergency, rather than by what technically was expressed by it.
The defendants, when applied to by the plaintiffs, could have remained silent, they were under no obligation to point out any course to be pursued, but when they chose to tell them to advise with their agent, it is reasonable to suppose that they intended that the plaintiffs should take his advice. When the plaintiffs, acting upon that advice turned over the whole case to the defendants’ agent, and the defendants thereupon, through their agent, accepted the cargo, and collected the proceeds of that sold, and received to their account the freight on that delivered, it would seem that unless there was some good reason to the contrary, that they should pay the plaintiffs the insurance.
The defendants urge that as to the freight that was. earned and paid, the contract of the insurers, that the-ship should not be prevented by the perils pf the sea, from earning freight money for the owners, has been performed. In the case of Scottish Marine Ins. Co. v. Turner (4 H. of L. Cas. 312, reported 20 L. & Eq. 24), the owners, after delivering from a damaged ship the cargo (timber) at the port of destination, and collecting, the freight, abandoned the vessel to the insurers, and paid to them the freight. On appeal, the judgment of the Scottish court of sessions was reversed, and it *455 was held that the freight having been earned and received by the owners, the contract of the insurers on freight was performed. The ground upon which the appellate court places this decision is that, the voyage was performed, and the freight money insured actually earned and received by the owners, and that but for their act after such earning and receipt, they might have retained it for their owners, and that the loss of freight, if any, was occasioned by the act of the plaintiffs themselves.
It will be perceived that the present case differs from this, in the important features, that the voyage was never completed, and that the freight was never actually collected or received by the owners, but on the contrary, was collected and received by the insurers through their agent. If these facts had appeared in the case referred to, it would seem from the opinion of the chancellor (Lord Craneworth), and also that of Lord Truro, that they would have held the insurers liable.
I am led to the conclusion, that the perils of the sea insured against, prevented the vessel from earning freight for her owners, and that the receiving and taking possession of a part of the cargo and delivering it, and collecting the freight by the insurers through their agent, can in no way prejudice the right of the owners to recover for their' loss. The courts seek to apply the most liberal construction to contracts of marine insurance. All narrow technicalities are sought to be avoided as various nationalities and languages are frequently invoked in their construction, and it would ill accord with such a policy to hold that the uncontradicted statement on the part of the defendant to the plaintiffs, after the loss of the vessel, and their subsequent action through their agent, wás unimportant and irrelevant. It is difficult not to see, that it led to the transfer of property and moneys to their *456 benefit, by the plaintiffs relying upon it. The plaintiffs having acted in good faith, should not be prejudiced by the steps they took in consequence of it.
There are no cases that fully sustain the ground taken by the defendants. The case cited of Ogden v. General Mutual Ins. Co. (2 Duer, 204), differs from this, because the vessel was not lost, and the freight was insured, with the provision that the company “ should not be liable for any partial loss whatever.’’
The evidence shows that there was a total loss of the freight, as far as the owners were concerned, and under the circumstances disclosed, there should have been a verdict directed for the plaintiff for the amount of the insurance, with interest, instead of for the lesser sum for which a verdict was directed.
The exception of the plaintiff to the direction of the verdict for this lesser sum by the court should be sustained, and the verdict set aside, and a new trial ordered, with costs to plaintiffs, to abide the event.
Spier, J., concurred.