Pierrepont, J.
The policy in this case is an ordinary printed freight policy; the words “ on passage money ” are written in.
Upon well settled rules of construction, the contract must be regarded as relating to “passage money'1'1 only. (1 Arn. on Ins., 79, 80, 210; 2 Cur. U. S. R, 277, 291; 4 East R., 140.)
The policy was issued February 14th, 1850, and the steamship sailed on the 25th of the same month. The plaintiffs sold passage tickets for the voyage from Panama to San Francisco, both before and after the ship left New York. Each ticket contained the number of the berth to which the holder was entitled.
Some of these tickets were for “the month of April;” and some were for “ her first trip ” from “ Panama to the anchorage of San Francisco.” As appeared in evidence this was “ her first trip.”
There was evidence that on a voyage at and from New York to San Francisco, the usual point of embarkation of the passen *48 gers was at Panama; and as no contradictory evidence was offered, the usage may, perhaps, be considered as established for the purposes of this case.
If such usage is admitted, the underwritersihust be considered as having contracted with reference thereto. (1 Arn. on Ins., 429, 430, 72, 73; 1 Duer on Ins., 263, § 57, and authorities there cited.)
The plaintiffs contracted with the passengers that the steamer New Orleans should proceed from New York to Panama.and thence to San Francisco; and that each holder of a ticket should have passage on that steamer and be entitled to the berth named in his ticket.
If the plaintiff^ did not perform their contract the holders of the tickets could recover back the passage money paid in advance; the consideration upon which the money was paid having failed. (Brown v. Harris, 2 Gray, 359; Vanderbilt Cases, 19 Barb., 222; 21 id., 26; Lewis v. Marshall, 7 Man. and Grang., 729; Cope v. Dodd, 13 Penn. R., 33.)
The policy being a contract to insure passage money, the question arises, what passage money? Was it merely the passage money of the tickets sold prior to the date of the ship’s departure, or did it embrace all tickets sold for that voyage of the steamship New Orleans? Was it the passage money of those only who .left New York in that ship, or did it include also the passage money of those who might afterwards embark at Panama?
In determining these questions the usage and course of trade, if such usage existed, becomes an important element. By the terms of the policy the ship was allowed “ to use port or ports on the passage.” And as the usage was then established to receive passengers at Panama, the underwriters must be considered as having regard to that usage when they issued the policy; and hence the contract of insurance would cover also the passage money represented by the tickets which entitled the holders to embark at Panama for that voyage..
The ship was retarded but finally performed her voyage. Instead of arriving at Panama in April as was expected, she did not reach there until the 23d of August. She then took some passengers and proceeded to San Francisco. But the passengers *49 who had arrived at Panama with tickets for April, and for the first trip of the New Orleans, had been sent forward at the expense of the plaintiffs, or had demanded and received back their passage money.
It is here important to consider whether the plaintiffs were under any legal obligation to forward the holders of the tickets by some other conveyance, or to return them the money which they had paid for their passage.
• If the plaintiffs were under no such legal obligation, then in no aspect of this case are the defendants liable.
Where there is no express agreement to transport within a specified time, a carrier is not responsible for delays occurring without his fault. (Wibert v. N. Y. & Erie R. R. Co., 2 Kern., 245; Conger v. Hudson River R. R. Co., 6 Duer, 375.)
The plaintiffs’ contract with the holders of the April tickets was to forward them by the steamer New Orleans during that month, and these ticket holders had a right to demand that they be so forwarded. (Cobb v. Howard, 10 N. Y. Leg. Obs., 355; see opinion of Judge Nelson.)
But the defendants contend that the holders of those tickets which were sold “ for the first trip ” of the New Orleans, could not have recovered back the passage money paid, even though the ship had been detained at St. Thomas for two years beyond her expected arrival at Panama. I entertain a different view of the law. This line had been established some two years before these tickets were sold. The steamer New Orleans, named in the tickets, had left, or was about to leave New York for Panama ; she was expected to arrive there in April; the tickets were “ for her first trip,” and this voyage was the commencement of “ her first trip.” The passengers were on their way to California; time was to them a consideration of the utmost importance, and this was a matter of general notoriety and well known to the shippers. Under these circumstances the contract of the plaintiffs with the passengers must be regarded as a contract to forward the holders of those tickets in a reasonable time after their arrival at Panama. After waiting at Panama a reasonable time for the arrival of the steamer, these passengers had a right to demand a return of their passage money, or to be forwarded by some other vessel. (Yates v. Duff, 5 Carr. & P., 369; 3 Kent *50 Com., 204; Abbott on Ship., 249, 351, 361; Phillips v. Irving, 7 Man. & Grang., 328; Glaholm v. Hayes, 2 id., 267.
But though the passengers might have recovered back their passage money, yet it does not follow that the defendants would therefore be liable to the plaintiffs.
The defendants can be held liable only on the ground of their own contract. That contract is a policy of insurance and imposes upon the underwriters no other obligations than those which flow from the terms of the policy .as interpreted by the law of insurance as it stood when the policy was issued.
It has long been settled law that retardation of the voyage by a peril of the sea is not covered by a policy like this where freight is insured.
The underwriters take upon themselves no risk as to the length of the voyage. But they only undertake that the ship shall not be prevented from performing her voyage by any of the perils insured against, so as to be unable to earn the freight insured; they do not undertake any risk as to the cost or time of the voyage. (Jordan v. Warren Ins. Co., 1 Story C. C. R., 351; Mayo v. Maine Fire Ins. Co., 4 Mass., 374; Everth v. Smith, 2 Maul. &. Sel., 278; 2 Arn. on Ins., §§373, 396; McSwinny v. Royal Ex. Ass. Co., 13 Jurist, 489; Ogden v. The General Mutual, 2 Duer, 220.)
When this policy was issued, the law was well settled as to the construction of its terms as applied to freight; and if the insurance had been upon freight' to be shipped at Panama, the plaintiffs could not have recovered in this action. Is a different construction to be given where passage money instead of freight is the subject of insurance ? Does that change the undertaking on the part of the underwriters where all the other terms of. the policy are the same ?
No time is expressed in the policy within which the steamer was to arrive at Panama; but the plaintiffs contend that the undertaking was that the ship should not be prevented by the perils of the seas from arriving at Panama in time to take the passengers in accordance with the shippers’ contract. It does not appear from the case that the underwriters had any knowledge of the contract between the shippers and their passengers, and *51 the policy must be construed according to the legal meaning of its express terms.
The steamer reached Panama, took passengers there, and completed her voyage. Suppose she had found more passengers there when she arrived in August than were waiting in April, and had taken them on; would it then be contended that the underwriters were liable ? If they were liable because of retardation beyond the month of April, then the liability was complete on the first day of May, and an action would lie against them.
If the plaintiffs had commenced suit on the first of May, and had recovered judgment on the first of August, which the defendants had then paid, and after that the steamer had arrived at Panama, and there taken more passengers than were waiting in April, and had proceeded with them to San Francisco, it would then be evident that damages had been recovered against the defendants for breach of contract, which, according to all former construction of such contract, had not at all occurred.
It so happens that the steamer did not earn as much passage money on this voyage as though she had reached Panama in April; but it might have been the other way; and I am of opinion that the same rules of construction, as to' length and retardation of the voyage, are to be applied in this case as have been heretofore applied to freight policies; and that the vessel having finally performed her voyage, and having taken passengers and earned passage money on that voyage, there has been no breach of contract on the part of the underwriters, and that the plaintiffs are not entitled to judgment in this action.
It is by no means clear that the steamer was prevented, by perils of the seas, from reaching Panama in time for the April passengers. The proof is, that the ordinary time for such a ship to go from New York to Panama, was from sixty to seventy-five days; whereas, there were only sixty-three days between the time she left New York and the last of April; and it appears from the case that the vessel was retarded by other causes besides “perils of. the seas."
I think the plaintiffs have not made out a case which entitles . them to recover, and that judgment should be entered for the defendants, dismissing the complaint.
*52 Slossoh, J.
There appear to have been three classes of passengers. One class embarked in the vessel at Few York, and made the entire voyage • another engaged for the passage from Panama to San Francisco, in the month of April, and the third engaged for the passage from Panama to San Francisco in the first trip of the steamer—all paying for their passage in advance.
In respect to the first class, no question whatever arises. The receipt or ticket given by the plaintiffs to the second of these classes for the passage money, is expressed to be “for the passage of-, in the steamship Few Orleans, from Panama, in the month of April, to the anchorage of San Francisco.”
That given to the third class is the same in all respects, except that the words “ on her first trip,” are used instead of the words “inthe month of April.”
These receipts or tickets constituted valid contracts on the part of the owners of the vessel with their passengers, to transport them from Panama to San Francisco. (Cope v. Dodd, 13 Penn. R., 33.)
The vessel not having arrived at Panama in the month of April, the plaintiffs, acting doubtless upon the supposition that they were legally bound to provide other means for the transportation of their passengers or to refund the money which they had received in advance, did so refund to a considerable amount to those who preferred not to go on, and expended a very large sum in forwarding the remainder of the passengers from Panama to San Francisco, and incurred heavy expenses for the support of the passengers while detained at Panama, and they now claim to recover these moneys of the defendants, to the extent of the 'sum insured, as a loss within the policy.
On the argument, this assumed legal obligation on the part of the plaintiffs was strongly pressed as lying at the foundation of the claim upon the insurers, and the argument necessarily assumed that the policy, notwithstanding the generality of the expression by which the subject of the insurance was defined, covered the special contracts in question; in other words, that taking into view the usage of the trade, the contract of insurance in this instance, was in legal effect an undertaking to indemnify against any loss of passage money which the plaintiffs might suffer under these special contracts in which time is made *53 an essential element, -whether the contracts were made known to the insurer or not, if such loss was the consequence or result of a peril of the sea.
In such a view of the case the legal obligation of the plaintiffs to refund the passage money on their failure to fulfill their contract in time, or to provide other means for the transportation of their passengers, might perhaps become an important question, but the construction which we haye given to the policy, as will be seen, rejects the idea of its being an undertaking to indemnify against these special agreements in any such sense as contended for, and for this reason as well as for the more important one, that the defendants’ liability is to be determined by the nature and character of the proximate cause of the loss, it is unnecessary to discuss the question whether under the circumstances the plaintiffs were under a legal obligation to refund these moneys or provide other means of transportation for their passengers; whether they were or not does not affect the question of the defendants liability under this policy.
I should however feel but little difficulty, were it necessary to do so, in expressing an opinion on the subject of this liability of the plaintiffs to their passengers, and for all the purposes of this decision am willing that it be assumed that such liability did exist in respect to both the “April” and “first trip” passengers, and that the plaintiffs in refunding their passage money which they had received and providing other means for the transportation of. the parties who held their tickets and insisted-on going on, did only what they were under a legal obligation to do.
Having done so can they recover the moneys so expended or refunded of these defendants as a loss under this policy ?
The insurance is upon “passage money, at and from New York to San Francisco, with liberty (to the insured) to use port or ports on the passage.”
The contract is to be construed in reference to the usage in the particular trade in which the steamer was to be engaged, and which is clearly established, though like the trade itself, of recent date, and this was to engage passengers through from New York to San Francisco, taking them by steamers to Chagres, thence by land across the Isthmus to Panama, where they embarked in *54 other steamers of the line to San Francisco, and when steamers left Hew Work for San Francisco by way of Cape Horn it was the practice to advertise and engage passengers in Kew York to embark by such steamers at Panama.
In view of this usage, and even without it, under the liberty to “ use port or ports on the passage ” the policy in this case covers passage money to be earned for the portion of the voyage between Panama and San Francisco, as well as that for the entire voyage around the Cape; but it' by no means follows that it covers the particular passage money stipulated for in these contracts in such sense as that it is to be considered as the specific subject of the insurance. The same rules of construction apply to an insurance on “ passage money ” as to an insurance on “ freight,” and it was expressly held in Everth v. Smith (2 Maule & Sel. R., 278) that an insurance on “freight” simply was not an insurance on the particular freight stipulated for in the charter party, but that if the vessel earned any freight, though not that particular freight, the underwriters would not be liable.
After all it is not perhaps material whether the policy covers the particular contracts or not, since the question in either aspect must ultimately come to this, whether the loss is one by a peril insured against; if it is not, it is of little' moment whether the policy attached upon the passage money secured by the contracts, or not, since in neither case would the' insurers be liable.
I address myself therefore to this question.
Was the loss of the passage money under these contracts (assuming them to have been covered by the policy) attributable to a peril against which the insured were protected by their policy ?
The loss was owing to the delay of the vessel in reaching Panama, by reason of which disappointment' the plaintiffs (whether legally bound to do so or not is immaterial) refunded the moneys which they had received of the parties whom they had contracted to carry from that port to San Francisco and who did not wish to go on, and procured passage in another vessel at great expense for those who insisted on being carried to their journey’s end.
It is said that this retardation being a consequence of the injuries sustained by the vessel from perils of the sea, obliging her *55 to put into St. Thomas for repairs constitutes a loss within the policy. To this the answer is obvious; the insurer is only answerable for losses that are the direct or necessary consequence of a peril covered by the policy; the damage to the ship was the immediate consequence of a peril of the sea; her delay at St. Thomas was the cause of the loss of the passage money in question; the loss therefore is attributable not to the peril, which forced the vessel into St. Thomas, as its proximate cause, but to the retardation of the voyage which was a consequence of that disaster.
It is true that the insurer is liable for the necessary natural and inevitable, as well as for the immediate, consequences of the peril, but he is not liable for all the indirect or remote results of it. See Tilton v. Hamilton Insurance Company, (1 Bosw. R., 367,) where this doctrine is discussed.
• It cannot be said that the loss of passage money generally, nor the loss of the particular passage money stipulated for in these contracts, was in any sense a necessary or inevitable, or perhaps even a probable, consequence of the peril which obliged the ship to stop at St. Thomas. Her detention there, as to time, was a matter wholly uncertain, depending on the facility of procuring repairs. The ability of the ship to resume and prosecute her voyage and earn her freight depended on the extent of her disaster and the means at hand for repairing her, and was not affected by the time occupied in making her repairs. Even if it be admitted that the Company have undertaken to insure these specific passage moneys, they have done so only against the perils enumerated in the policy. They have not undertaken that these moneys shall be earned at all hazards, and within the period specified in the contracts, but that they shall not be lost through any disability or the ship, from a peril insured against, to earn them. Ho such disability is pretended. The vessel accomplished her whole voyage, and earned, or might have eatned, all her stipulated passage money. She actually did earn that of the passengers who went with her around the Cape; and she was in a condition to earn that of those who might be ready to embark in her on her arrival at Panama.
It will not be pretended that there was any loss on the passage money of those who embarked in the ship at Hew York, and *56 made the voyage around the Gape, nor that these passengers could successfully claim, by way of reclamation for the delay at St. Thomas, a return of the whole or any portion of the price of transportation which they had paid in advance. In respect to them there has been no loss by a peril insured against, because the vessel, though delayed, actually accomplished the voyage, and completed their transportation. She was equally competent, and was ready and willing, to do the same thing, with no greater delay, in respect to those who preferred to join her at Panama; and had those passengers been at that port on her arrival, they could have claimed their berths as against all the world, and have gone in her to her port of destination.
It is difficult to perceive how a different construction is to be given to the policy as respects one set of passengers from that which applies to the others, or how, under the same contract, which makes no discrimination, the Company should be held liable, under the same state of facts, in respect to the loss of the passage money due from one class of passengers, when it would not be in respect to that due from another.
If it be conceded that the parties who held these tickets were not bound to wait the arrival of the vessel at Panama beyond the month of April, or beyond a reasonable time, that was a matter between them and the owners of the vessel only; and even if they had thqright to throw up their contracts after the period indicated, their doing so could not, in the absence of any stipulation to that effect in the policy, impose on the insurer an obligation of indemnity.
A policy might be unquestionably framed to cover such a case; but, certainly, this one is not so framed.
The general rule, that the insurer is not liable for the consequences of a mere retardation of the voyage, though resulting from a peril of the sea, is too well settled to be disputed, and is equally applicable to the case of freight as of cargo.
The case of Anderson v. Walks, (2 Maule & Sel. R., 240,) was that of an insurance on cargo from London to Quebec. After accomplishing a greater portion of the voyage, the ship was, by stress of weather, obliged to put back into the port of Kinsale, in Ireland, where she was detained so long for repairs that the season was lost, and no other vessel could be procured to carry on the *57 cargo, and even if one could have been procured, it was too late to have prosecuted the voyage that season. The voyage was accordingly abandoned, and the captain sailed on another voyage. The cargo, which was partially damaged, was sold as damaged, and the plaintiffs abandoned and claimed for a total loss. For the plaintiffs it was contended that, as there was a known course and period for performing such a voyage, it was implied in the contract that' the voyage should be performed in such a period, or at least within a reasonable time; but the Court held, that “interruption of the voyage does not warrant the assured in totally disengaging himself from the adventure and throwing this burden on the underwriters. Disappointment of arrival,” said Lord Ellenbobough, “is a new head of abandonment in insurance law.” If the cgrgo be perishable, the case may be different; but that is the only exception. (3 Kent, 7th ed., 401.)
The case of Everth v. Smith, (2 Maul. & Sel.,) already cited, was that of an insurance on vessel, freight and cabin cargo, at and from Eiga and any other port in the Baltic to the United Kingdom, detention by princes being one of the perils insured against. The vessel sailed from London on the 12th day of July, 1812, under a charter party, by the provisions of which the ship was to report herself at Eiga to the agent of the charterers, who was to supply her with a cargo for the port of London. She delivered her outward cargo at another port in the Baltic, and then proceeded to Eiga under a Eostock flag, arriving there on the 23d day of September, and reported herself to the charterers’ agent. But the Eussian government prohibited the loading of any goods on board her, because of her having sailed under that particular flag, and she was thus detained until the 20th. day of October, when the frost set in, in consequence of which she was obliged to remain the whole winter at Eiga, and did not get any cargo from the charterers’ agent, but in the spring the master procured a cargo from other persons, with which he returned to England, but the expenses attending the detention amounted to more than the freight. The plaintiffs claimed that this was a loss of the specific freight which would have accrued under the charter party by means of one of the perils insured against, and therefore covered by the policy; while the defendants contended that it was not a loss within the policy, because the insurance was rtot *58 on any particular designated freight, but only on freight for a designated voyage, and that freight had been earned by the performance of the voyage; that to hold the insurer liable in such a case would be to make the underwriter not an insurer on freight for the voyage, but an insurer for the performance of the particular contract, and (which is the point to which the case is now cited) that even if this could be done, it did not appear that the contract could not have been performed, or that anything more than a delay in the performance was occasioned by the detention,' which is not a loss if freight be ultimately earned. The Court adopted this view. “ The underwriter,” said Lord Ellen-" borough, “did not insure-that any particular freight should be brought home, but if any freight is brought home, a loss has not happened' for which he undertook .to indemnify the assured;” that the only inconvenience that has arisen, was to be attributed to the protraction of the adventure; and he referred to Anderson v. Wallis and another case, as showing that that did not constitute a loss. “ The not obtaining the freight looked for,” said he, “ is a new head of abandonment, and so it is of loss.”
Retardation of the voyage by a peril insured against, does not constitute a technical total loss of the ship, unless she be rendered thereby totally incapable of performing her voyage, and this, even though by such retardation the voyage be not worth pursuing, or the cargo be thereby so injured as to be not worth transporting ; for such an insurance is not an insurance of the ship and the voyage, but of the ship for the voyage, which means that the ship shall not, by means of a peril insured against, be rendered incapable of performing her voyage. (Bradlie v. Maryland Ins. Co., 12 Pet. R., 378; Alexander v. Baltimore Ins. Co., 4 Cranch R., 370.) These cases are cited and approved -in Ruckman v. The Merchants' Insurance Company. (5 Duer, 342.)
There is no difference in principle, whether the claim be for a total or a partial loss.
In Mayo v. The Maine Fire and Marine Insurance Company, (4 Mass. R., 374,) the claim was for a partial loss of freight arising from the detention occasioned by an embargo. The vessel was subsequently released and received her stipulated freight. The plaintiff claimed that if the vessel had not been' detained she would have earned her freight in less time, and that therefore *59 there was a partial loss of freight; but the Court held there was no partial loss, and say: “ The underwriters did not insure any particular time in which the voyage should be performed, but only that the freight should be earned. They are not, therefore, answerable for a partial loss arising from the increased length of the voyage by the detention, any more than they would have been if the arrival of the vessel had been delayed by violent storms which had driven her out of her course.”
Without a further citation of authorities, I think it clear that an insurance on “ passage money,” generally, like an insurance on “ freight,” which does not specify any particular freight, does not bind the insurers to indemnify the insured against the loss of particular passage money, secured by special contracts with the passengers, and which are not shown to have been communicated to the insurer, or to have entered into his contemplation at the time of effecting the policy, except in those cases only in which he would be bound to indemnify were" there no special contracts in existence, and that is where, by a peril insured against, the ship is disabled from earning such passage money by completing her voyage; and that a mere retardation of the voyage, though a consequence of a disaster to the ship occasioned by a peril of the sea, if the ship actually prosecutes and completes her voyage eventually, is not a loss covered by a policy in such a form, and in which retardation or delay is not named as a peril, notwithstanding the insured may, through such delay of the voyage, have lost passage money secured by special contracts with parties whom he had engaged to transport within a certain time.
If the trade in the present case was novel and peculiar, so much the more necessity was there for parties resorting to special stipulations in their policies. The Court can only deal with contracts as they find them, and whether the result be disastrous to parties or not, can only interpret them on the settled rules of construction applicable to such instruments.
Judgment should be entered that the complaint be dismissed.
Woodruff, J.
Without expressing any opinion upon the question whether upon the facts appearing in this case the persons who had engaged passage in the steamship New Orleans and paid their passage money or any of them could, by law, have *60 recovered back such passage money, and without discussing some of the other questions which have been considered by my brethren, I fully concur in the conclusion at which they have arrived, viz., that the defendants are not liable to the plaintiffs under the policy declared upon for the loss of the passage money of those persons who, having engaged passage from Panama to San Francisco, neither embarked on board the vessel at Panama nor were there on her arrival at Panama in readiness to embark.
I do not deem an opinion upon the questions above alluded to at all necessary to the decision of this case. I prefer therefore to rest my conclusion upon a few of the grounds which may be abstracted from the opinions of my brethren and which, without necessarily adopting all the reasons assigned therefor, are briefly these:
By a policy of insurance upon passage money generally, for the voyage, there is covered the passage money of all persons who embark on the vessel.
Where the voyage described in the policy contemplates the use of ports intermediate its termini, the policy covers the passage money of such persons as have engaged passage at such intermediate ports to embark in her on her arrival at such intermediate ports and are there in readiness to embark in her on her departure. These two classes form the subject of the insurance.
The insurer may therefore be said to guarantee to the ship owner that the vessel shall not be prevented, by a peril insured against, from earning the passage money of those who embark; and that she shall not be prevented, by a peril insured against, from using those intermediate ports and arriving there in a condition capable of receiving and transporting any persons who have engaged to take passage in her when she arrives ancl who are there in readiness to embark for the residue of the voyage.
The policy does not necessarily cover all moneys paid for passage under special terms or conditions which the owner and any particular passenger or class of passengers may think proper to assent to as between themselves so as in any sense to guarantee that those special terms or conditions shall be complied with.
The undertaking in the policy is not that the vessel shall complete her voyage or arrive at any particular port within any *61 period of time greater or less, or by any particular day. Nor that she shall so arrive as to enable the owner to perform any particular contract or contracts with persons engaging passage. But only that she shall arrive; that she shall be in a condition in which she can receive on board such persons as are in readiness to embark in her, and that the passage money of those passengers shall be earned: or, more strictly, that such arrival, condition and earning of the passage money shall not be prevented by a peril insured against.
Mere delay or retardation in the completion of the voyage or in accomplishing any part of it, though it be caused by a peril insured against, constitutes no ground of claiip against the insurers under such a policy. The contract by them is satisfied if the voyage is actually made and the vessel is at all times in a condition, at any of the ports she is permitted to use, to receive and carry all persons who, having engaged passage, are ready to embark for or on the voyage which she actually makes.
The question whether, notwithstanding the voyage was made and all passengers were carried who embarked and all who, on her arrival at the intermediate port, were found to have engaged passage and who, then embarked, other persons with whom the owners had made special contracts to carry, but who would not or did not await the arrival of the ship New Orleans at Panama, could, by law, recover back the passage money they had paid, is wholly immaterial. If the owners deemed it wise to make contracts with such passengers and receive their -money upon terms amounting to a guaranty that the vessel should arrive at Panama, or be in readiness to leave Panama in the month of April or within any other period, the owners and not the insurance company took the hazard of such arrival. No such guarantee was made by the defendants. And on the other hand, if the passengers in the present case could not, under the terms on which they paid their passage money, have recovered it back, then, of course, the repayment was voluntary and the defendants are not affected by it.
Had passage money been paid to the owner by a person with whom, besides assuring him passage, the owner stipulated that she should sail from Panama by a particular day, the Company would be in no wise parties to such a contract. They have not *62 guaranteed, in any sense the ability of the ship to perform such a contract; nor that perils of the sea shall not detain the vessel beyond'such day.
The ship Hew Orleans performed the voyage described in the policy. She carried safely and delivered all persons who embarked in her as passengers for that voyage or for any part of it, and all persons whom the owners could procure, at any port at which she touched, to take passage in her on her arrival and departure from such port. Though perils insured against retarded "the voyage, they did not prevent her doing all this.
Ho loss has occurred within the policy sued upon.
These views are, I think, fully sustained by the principles of the adjudged cases, and the treatises on the subject. Those collected and stated in the opinions of my brethren are sufficient, and I should but repeat them if I were to extend the discussion to any greater limits. T.he defendants should have judgment.
Judgment for defendants. '