BEVERLY R. MYLES, Plaintiff, *v.* CUBA RAILROAD COMPANY, Defendant.

Municipal Court of New York, Special Term, Borough of Manhattan, October 30, 1943.

*Louis C. Haggerty* for plaintiff.

*Orison S. Marden* for defendant.

HAYES, J. This is a motion for summary judgment in favor of the plaintiff.

The action is brought upon a coupon for $25 once part of a coupon bearer bond issued by the defendant company. The complaint alleges that the defendant is a New Jersey corporation; that in September, 1902, it made, issued and delivered its first-mortgage fifty-year 5% bonds payable with interest at its office or agency in New York City, including a coupon bond No. 1736 for $1,000; that by the terms of the coupon No. 77 of bond No. 1736 the defendant agreed to pay to the bearer thereof $25 on January 1, 1941; that the plaintiff is the owner, holder and bearer of such coupon No. 77; that the coupon was presented for payment to the defendant on or about June 14, 1943, and that payment was refused.

The amended answer admits that defendant is a New Jersey corporation organized under special provision of the laws of New Jersey for the purpose of constructing, maintaining and operating a public-service railroad in Cuba. It admits that it made its mortgage to the Morton Trust Company as trustee, and recorded the same in Cuba in accordance with and subject to the provisions of Military Order No. 34 of February 7, 1902, duly issued by the military government established by the United States of America in the island of Cuba. That from time to time between 1902 and 1924 the defendant for valuable consideration made, issued and delivered its first-mortgage bonds in accordance with the terms of the mortgage and Military Order No. 34 of February 7, 1902. It denies that it issued a bond numbered 1736 for $1,000, and that among the coupons attached to the bond No. 1736 was coupon No. 77, by the terms of which the defendant agreed to pay to the bearer thereof the sum of $25 on January 1, 1941, but alleges and admits that among the coupon bonds made by the defendant and executed and delivered pursuant and subject to Military Order No. 34 was bond No. 1736 for $1,000 which was sold and delivered by the defendant in The Netherlands, and attached to said bond was coupon No. 77 for $25 payable January 1, 1941. It denies that the coupon in suit was presented to the defendant for payment at its office in New York City and its refusal to pay the amount of interest called for by the coupon, but alleges and admits that on or about June 14, 1943, coupon No. 77 of the bond was presented by the plaintiff for payment to an officer

of defendant in New York City and that payment was demanded. It denies that the sum of $25 with interest from June 14, 1943, is due.

As an affirmative defense the defendant alleges that it is a public-service corporation incorporated under a special provision of the laws of the State of New Jersey for the purpose of constructing, maintaining and operating a railroad outside the State of New Jersey. That the defendant has maintained and operated a railroad for public service in Cuba pursuant to the provisions of Military Order No. 34 of February 7, 1902, duly issued by the military government established by the United States of America in the Republic of Cuba prior to the effective date of the Cuban Constitution, and said Military Order is still in effect. That the defendant has recorded a certified copy of its articles of incorporation and bylaws in the Central Registry of Stock Companies and in the office of the Railroad Commission. That the defendant's sole business is the operation and maintenance of a public-service railroad and matters incidental thereto in Cuba, where defendant's properties are located and all of its income earned. That the properties of the defendant operate under the terms and provisions of Military Order No. 34 and the orders, decrees, rules and regulations of the National Transportation Commission. That the defendant executed its first mortgage on September 18, 1902, to the Morton Trust Company as trustee and recorded it in Cuba. This mortgage was for the purpose of raising money for constructing a railroad from a point on the Bay of Nipe in the Province of Santiago de Cuba in Cuba. The defendant between 1902 and 1924 issued bonds in Cuba, Canada, The Netherlands, Great Britain, and the United States, not exceeding in the aggregate $12,500 for each kilometer of completed standard-gauge railroad owned by defendant in Cuba at the time of the issuance of bonds, including branch railroads and extensions but not counting side tracks in making such computation. And the amended answer sets out that the bond and coupon in suit were sold and delivered by defendant in The Netherlands. The defendant's answer says that it was the intention of the parties to the first mortgage dated September 18, 1902, and the holders of bonds and coupons, that the laws of Cuba should govern with respect to rights and remedies of the holders of said bonds and coupons, the rights and remedies of the trustee of the first mortgage, and the rights and obligations of defendant. That during all these times the law of Cuba applied to the citizens of Cuba as well as to the citizens of other nations. That under Cuban law (a) no action

to recover on loans or debts secured by mortgage on property in Cuba (including loans and debts of corporations organized under the laws of other countries) may be maintained except in the court of first instance in the city of Havana; (b) all rights of action in any bond issued by a public-service railroad secured by mortgage are limited in the event of default to foreclosure of the mortgaged property; (c) bonds or other obligations in excess of the aggregate principal amount of $800,000, secured by mortgage on property situated in Cuba, shall bear interest at the rate of 1% per annum after June 4, 1940, notwithstanding any provisions to the contrary in any bond or mortgage outstanding, and suits to enforce the collection of interest at a rate of more than 1% per annum are prohibited by Cuban law; and (d) judgment and decrees rendered by courts of other nations shall not be recognized in Cuba when such judgments or decrees are in contravention of Cuban laws determined by or which relate to public order or affect real property in Cuba. That defendant has complied with the laws of Cuba and duly tendered to the holders of first-mortgage bonds and coupons full performance of all its obligations pursuant to those laws required to be performed, and has performed all the terms and conditions of its contract with first-mortgage bondholders.

The plaintiff's affidavits allege the ownership of the bond and coupon in suit, its purchase in New York, its presentation for payment, and that the amount called for on the face of the coupon was not paid nor any part thereof paid or tendered plaintiff.

The affidavits of the defendant deny presentation of the coupon at the agency of the defendant for redemption. They allege that by the laws of Cuba the defendant, a public-service corporation operating a railroad in Cuba and deriving all of its income from operations in Cuba, is in the Cuban sense a national public-service corporation. That because of certain Cuban laws beginning with Military Order No. 34 and amendments thereto and various other laws and decrees and the Constitution of Cuba, it is excused and relieved from its obligations which are in contravention of the laws of Cuba. That no interest in excess of 1% per annum may be paid by the defendant company because of the prohibitions of the new Cuban Constitution which contains certain provisions designed to relieve debtors, which automatically apply to the bonded indebtedness of the defendant. That the plaintiff's action has no merit and he is seeking to have a court of the United States act in derogation and in disregard of the Constitution of Cuba as applied to a public-service rail-

road operating in Cuba, and plaintiff is seeking to secure a preference over other bondholders. Further, that in view of Dr. Alfredo Lombard's affidavit, the bonds and coupons and the first mortgage should be read and construed as a single contract and were intended to be a Cuban contract; and at the very least a triable issue is presented as to whether the law of Cuba governs.

The affidavit of Dr. Alfredo Lombard, a practicing attorney, admitted to practice in Cuba, and Cuban general counsel for the defendant company, sets out that he is familiar with the laws of the Republic of Cuba, the Constitution of the Republic of Cuba regarding moratorium legislation, with the Presidential Decree No. 663, and with the Civil Code of Cuba. He states that he is familiar with the first mortgage dated September 18, 1902, from the Cuba Railroad Company to the Morton Trust Company as trustee, and familiar with the first-mortgage 5% fifty-year gold bonds and coupons issued pursuant thereto which are subject to the terms and conditions of the mortgage. He reiterates what has already been stated in the answer and the affidavits of defendant with reference to the laws of Cuba, and expresses the legal opinion that the transitory provision of the Constitution of Cuba has universal application to all obligations coming within its confines, including obligations owed by Cuban nationals and foreigners and obligations owed to Cuban nationals and foreigners.

The defendant is a New Jersey corporation. In 1902 it executed a trust mortgage to the Morton Trust Company in New York City. Under that mortgage it issued its first-mortgage 5% fifty-year gold bonds bearing interest at 5% payable semiannually on January 1st and July 1st in every year. Under the mortgage the defendant was obligated to maintain an " office or agency of said Railroad Company in the City of New York " (pp. 6, 23, first mtge.) for the payment of both principal and interest. The principal of the first-mortgage bonds is payable in New York.

The bond owned by the plaintiff is a bearer bond and the coupon is payable to bearer in New York.

The defendant alleges that by the laws of Cuba it is excused from its failure to pay the interest on the coupon in excess of 1% per annum.

The plaintiff has not attempted to foreclose the mortgage but proceeded on the coupon itself.

The general rules in New York regarding legality of performance of contracts which may be considered settled are as follows:

1. "All matters bearing upon the execution, the interpretation and the validity of contracts, including the capacity of the parties to contract, are determined by the law of the place where the contract is made."

2. "All matters connected with its performance, including presentation, notice, demand, etc., are regulated by the law of the place where the contract, by its terms, is to be performed."

3. "All matters respecting the remedy to be pursued, including the bringing of suits and the service of process, depend upon the law of the place where the action is brought." (*Union Nat. Bank* v. *Chapman*, 169 N. Y. 538, 543.)

4. "A corporation 'must dwell in the place of its creation, and cannot migrate to another sovereignty' (*Bank of Augusta* v. *Earle*, 13 Pet. 588), though it may do business in all places where its charter allows and the local laws do not forbid. *Railroad* v. *Koontz*, 104 U. S. 12. But wherever it goes for business it carries its charter, as that is the law of its existence (*Relf* v. *Rundel*, 103 U. S. 226), and the charter is the same abroad that it is at home." (*Canada Southern R. Co.* v. *Gebhard*, 109 U. S. 527, 537.)

The mortgage was made in New York and the bonds, both principal and interest, are payable in New York. The action was brought in New York where the plaintiff has a right to bring it. The coupon is a common-law obligation enforcible without the aid of a statute. It is not "some peculiar liability, or remedy, created by a foreign state." (*Hutchinson* v. *Ward*, 192 N. Y. 375.)

At page 10 of Exhibit 1 attached to the defendant's affidavits, we read: "It is the opinion of Dr. Alfredo Lombard, Cuban Counsel for the Company * * * (d) that no legal action would be entertained in Cuba against the Company or its property in contravention of the moratoria provisions, whether or not a judgment had been obtained in the United States or any other country other than Cuba, whether such judgment was for the payment of interest on the bonds represented by coupons or for the payment of the principal of the bonds or otherwise; and (e) that no receiver or trustee appointed by the Courts of the United States or any country other than Cuba, based upon acts taken by the Company in reliance upon the moratoria provisions, would be recognized in Cuba and any such receiver or trustee would not be permitted to take possession of property in Cuba."

All the foregoing indicates no prohibition against suits against the defendant company, but only that the Republic of Cuba

will not recognize any judgment obtained outside Cuba in actions on this kind of obligation.

There is nothing in the laws of Cuba which operated to confine the rights of the obligee's remedy upon his coupon to the courts of Cuba. The aforementioned laws of Cuba have no extraterritorial effect; " The laws of other Governments have no force beyond their territorial limits; and if permitted to operate in other States, it is upon a principle of comity, and only when neither the State nor its citizens would suffer any inconvenience from the application of the foreign law ". (2 Kent Comm. 406. See Story on Conflict of Laws, § 280.)

Judgment is directed accordingly in favor of the plaintiff in the amount demanded in its complaint.