SALOMON ECK, Respondent, *v.* N. V. NEDERLANDSCH AMERI-KAANSCHE STOOMVAART MAATSCHAPPIJ, Appellant.

Supreme Court, Appellate Term, First Department, December 6, 1944.

*George F. Tinker* and *Ray Rood Allen* for appellant.

*George X. Levine* for respondent.

OPINION *Per Curiam.* In July, 1938, plaintiff, a Jewish resi-· dent of Vienna, purchased, at defendant's office in that city, "provided room is available", four cabin class tickets for himself, wife and two daughters on steamer *Nieuw Amsterdam* "for departure on summer season" from Rotterdam or Boulogne-sur-Mer to New York. Although it is stated in the *anweisung* (so-called receipt or ticket) that the amount paid was $1,728 the payment was actually made in reichsmarks. He subsequently paid 603 marks for shipboard expenses. Plaintiff testified that at the time of purchase defendant's director told him the receipt was good for two years.

Plaintiff's two daughters obtained American visas in August, 1939, and they were given third-class passage — not cabin passage as provided by the contract — in September, 1939, on the steamship Volendam.

No visa was procured for plaintiff and his wife until March 9, 1940; he then demanded first-class passage on the New Amsterdam, but was told that the passage ticket was invalid. Plaintiff thereupon again paid for passage and arrived with his wife in New York April 17, 1940.

Defendant proved the pertinent German law in force in Austria from the time of the absorption of Austria into the German Reich, prior to the booking by plaintiff, through March 27, 1941, nearly a year after plaintiff arrived in this country, by the introduction of official publications containing the written laws and by translations thereof and the testimony of an expert on German law; and also showed that neither currency marks· (which plaintiff paid for his passage) nor nontransferable *auswanderer* marks (in which alone plaintiff would be entitled to a refund under German law) had a market value in the United States measurable in dollars.

By the provisions of one of the decrees relied on, which became effective January 1, 1939, "open passages * * * can only be maintained if the reservation of the vessel and the

sailing date are effected on or before December 31, 1938, and if the sailing of the vessel to the port of destination of the emigrant takes place by March 31, 1939," and it would seem therefore that the open booking was rendered invalid. Further, at the time plaintiff paid for his accommodations the German law was that refund of passage money paid in Vienna could only be made in marks in the German Reich; and under German regulations defendant could not get the money; in the circumstances the marks could not be exchanged into any other currency. To allow plaintiff, after dealing with defendant solely on a basis of reichsmarks (now valueless), a recovery in United States dollars would, in our opinion, constitute a grave injustice to defendant. No claim may be made that defendant has been unjustly enriched, for as indicated above, defendant could not get the reichsmarks out of Germany.

Judgment was awarded plaintiff in the sum of $2,259.81, the full amount demanded in the complaint.

This court has held in this class of cases, upon similar facts, that the German law affords a defense to such actions (*Steinfink* v. *North German Lloyd Steamship Co.,* 176 Misc. 413; *Schlein* v. *N. V. Nederlandsch,* 34 N. Y. S. 2d 720; *Translateur* v. *United States Lines Co.,* 179 Misc. 843), and the plea as such has apparently been upheld (*Werfel* v. *Zivnostenska Banka,* 287 N. Y. 91, 93), the court in that case saying: " Among the issues to be tried are the terms of the contract; what is the foreign law which either party claims to be applicable and in what respect may such law have been rendered inoperative by reason of events happening subsequent to the making of the contract." No such events are claimed to be disclosed by the present record.

Respondent contends that the German law is inapplicable because of the alleged statement of the United States Secretary of State released to the press July 27, 1942, that " This government has never taken the position that Austria was legally absorbed into the German Reich." We do not see how the nonapproval of the seizure of Austria by Germany renders the defense of German law inoperative.

In *Samiloff & Co.* v. *Standard Oil Co.* (262 N. Y. 220, 227) the court says: " The courts may not recognize the Soviet government as the *de jure* government until the State Department gives the word. They may, however, say that it is a government, maintaining internal peace and order, providing for national defense and the general welfare, carrying on relations with our own government and others. To refuse to recognize that Soviet Russia is a government regulating the internal

affairs of the country is to give to fictions an air of reality which they do not deserve.

" The courts cannot create a foreign wrong contrary to the law of the place of the act. (*Slater* v. *Mexican Nat. R. R. Co.*, 194 U. S. 120; *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347.) The cause of action herein arose where the act of confiscation occurred and it must be governed by the law of Soviet Russia. According to the law of nations it did no legal wrong when it confiscated the oil of its own nationals and sold it in Russia to the defendants. Such conduct may lead to governmental refusal to recognize Russia as a country with which the United States may have diplomatic dealings. The confiscation is none the less effective. The government may be objectionable in a political sense. It is not unrecognizable as a real governmental power which can give title to property within its limits."

Further, in currency legislation the policy of the sovereign governs the medium of payment, even though such payment is provided for outside of the territorial jurisdiction of that sovereign. (*Guaranty Trust Co.* v. *Henwood*, 307 U. S. 247; *Norman* v. *B. & O. R. Co.*, 294 U. S. 240.)

*Moscow Fire Ins. Co.* v. *Bank of New York* (280 N. Y. 286, affd. by an equally divided court, 309 U. S. 624) has no bearing on the controversy here; that litigation was with respect to " property within this state and subject to the law of the state ", and otherwise the facts there do not come within the scope of this case.

The judgment should be reversed, with costs, and judgment directed for defendant, with costs.

EDER, J. (dissenting). The action was brought to recover damages for breech of a contract of transatlantic carriage. The plaintiff recovered and defendant appeals.

On July 22, 1938, the plaintiff purchased from the defendant first-class passage to New York on the steamship *Nieuw Amsterdam* for his wife, his two children and himself, the sailing to be from Rotterdam, Holland, or from Boulogne, France. The contract, an oral one, was made in Vienna, Austria, with the defendant's director in charge of its office there. The cost was computed *in dollars* and reached the sum of $1,728; later, on August 10, 1938, there was added the further sum of $240 for board money for use on the vessel, making a grand total of $1,968. At the request of the defendant replacement of the dollars was made by the plaintiff in reichsmarks, but the

transaction and the cost of transportation were, as stated, computed *in dollars;* acknowledgment thereof was attested by defendant in a writing called " Anweisung ", referring to the passage cost and payment; and with respect to the board money the plaintiff's testimony as to such like replacement was not disputed.

On the day previous to the mentioned transaction and contract of passage the plaintiff explained to the defendant's said director the predicament which confronted him; plaintiff informed the director that he lived with his family in Vienna and was engaged in business there. The undisputed evidence is that he resided there for twenty-four years. The plaintiff is a Jew; he told the director that with the invasion and conquest of Austria by the Nazi German Army (which occurred on March 11, 1938) the property of all Jews was seized and confiscated and that all Jews were ordered to permanently leave Austria; he was one of the unfortunates; he had been arrested by the Gestapo; his possessions had been taken away from him and he and his family were obliged to leave. The German government had assumed control of that country. Plaintiff further explained that he had been to the American Consulate to obtain visas for his family and himself, but was there told that none would be obtainable for at least six months and that there was no certainty of the exact date when visas would be available. Yet he was desirous of securing such passage so that when the visas were obtainable he and his family could leave with accommodations already purchased. How then, he desired to know, could such a situation and contingency be provided for in view of the uncertainty of the visa availability date?

The defendant's director thereupon gave to the plaintiff his solution of the problem, namely, he informed the plaintiff that he could purchase such passage under an agreement whereby the passage tickets could be used at any time within two years from the date of purchase, and that even if plaintiff did not use the tickets within that time the life of the tickets could be prolonged on payment of a small additional sum. This was acceptable to the plaintiff and the purchase of passage made and paid for as aforestated.

On August 14, 1938, plaintiff and his family left Vienna and on the same day arrived in Antwerp, Belgium, and there they remained waiting for their American visas. As has been mentioned, the contract of carriage was entered into on July 22, 1938; by the end of August, 1939, plaintiff's children obtained

their American visas; plaintiff thereupon went to the defendant's office in Antwerp and requested first-class passage on the *Nieuw Amsterdam* for his children, but the defendant arbitrarily declined to furnish it and informed the plaintiff that it would furnish the children only third-class passage, and on the steamship *Volendam*. Plaintiff protested, but to no avail, and, in the circumstances, being helpless, he was compelled to submit, and the children sailed for the United States on September 9, 1939, third-class passage, for which the plaintiff was charged the sum of $234, and this amount was deducted by the defendant from the said sum of $1,968, leaving an unused balance of $1,734 with the defendant. This refusal of the defendant to transport the plaintiff's children, as demanded by the plaintiff, was a clear breach of the contract by the defendant.

Thereafter and on or about March 9, 1940 (still within the mentioned two-year period), plaintiff and his wife received their American visas and on that date plaintiff visited the defendant's Antwerp office and requested first-class passage to the United States on the *Nieuw Amsterdam* for his wife and himself, which the defendant refused to furnish; he was told that the passage ticket was invalid and could never again be used for passage; he protested, but got neither passage nor the return of the passage money. This refusal was likewise a clear breach by the defendant of the aforementioned contract of carriage.

Thereafter the plaintiff and his wife sailed for the United States on the *Volendam,* but plaintiff was required to pay over again the cost of that passage; they arrived on April 17, 1940. Subsequent thereto this suit was brought by plaintiff to recover the sum of $1,734 as plaintiff's damage sustained by reason of the defendant's breach of the said contract.

It is quite apparent that plaintiff is entitled to a recovery unless some valid legal impediment appears which precludes it.

To defeat any recovery by plaintiff defendant's basic contentions are that the transaction and contract were governed by German law; that by virtue of a German decree of December 15, 1938, alleged to be a " valid " decree, the plaintiff is barred from any recovery, as by said decree all bookings of steamship passages and credits to be used in connection therewith for emigrants *from Germany* made prior thereto were declared invalid unless the sailing of the vessel on which the passengers were to be carried took place on or before March 31, 1939, and in the case of passengers theretofore booked in which a definite ship and sailing date had not been fixed, unless a definite ship

and sailing date were fixed on or before December 31, 1938; that, further, under said decree plaintiff had no established right to a refund of the unused passage money other than a refund in blocked reichsmarks which were payable only in Germany. The point was also made that any marks refundable are valueless, and hence plaintiff has sustained no damage.

In taking this position the defendant follows a pattern of defense predicated upon previous rulings of this court, and to which the majority of this court subscribe in making the determination of the instant case; but, in my opinion, the rulings are without application or effect here because the factual situation in the case at bar does not parallel the factual situation in those cases in which the rulings were made.

In the reported cases upon which the defendant relies (*Branderbit* v. *Hamburg-American Line*, 31 N. Y. S. 2d 588, affd. 266 App. Div. 1011; *Schlein* v. *N. V. Nederlandsch*, 34 N. Y. S. 2d 720; *Lowenhardt* v. *Compagnie Generale Transatlantique*, 35 N. Y. S. 2d 347; *Ornstein* v. *Compagnie Generale Transatlantique*, 31 N. Y. S. 2d 524, affd. without opinion by Appellate Term, First Department, Nov. 9, 1942 [unreported]; *Spiegel* v. *United States Lines Co.*, 27 N. Y. S. 2d 631; *Steinfink* v. *North German Lloyd Steamship Co.*, 176 Misc. 413; *Translateur* v. *United States Lines Co.*, 179 Misc. 843), there were absent vitally distinguishing features. For instance, in those cases the transaction was not, as here, in dollars, and in the *Ornstein* case, which is the only one that bears any resemblance, the parties by express contract agreed that total or partial refund was to be made in Vienna only, and in reichsmarks only; no such agreement was made in the case at bar. Again, the announced policy of our Government toward the legality of the German invasion and conquest of Austria and the consequent validity or invalidity of the German Government's decree and laws, applied to and imposed upon the conquered Nation and its nationals and foreign inhabitants, were not involved or passed upon. In the case at bar they are elements of fundamental importance.

All of the above-cited cases, other than the *Translateur* case (*supra*), were decisions rendered prior to July 27, 1942, the date of the publication of our Government's policy regarding the legality of the German occupation and absorption of Austria into the German Reich, and the *Translateur* case, decided in January, 1943, did not involve or pass upon this highly important feature. The policy of our Government in that connection was set forth in the Department of State official press release

under date of July 27, 1942, as follows: " This Government has never taken the position that Austria was legally absorbed into the German Reich."

In pleading the German laws ·and decrees as a defense and in relying thereon to thwart a recovery by plaintiff,·the defendant proceeds upon the assumption *ipse dixit* that our Government has recognized the legality of the German invasion and conquest of Austria, and, as lawful, its absorption into the German Reich, and hence as a concomitant.the validity of its laws and decrees in the conquered territory, for the defendant expressly pleads such laws and decrees were " valid." Manifestly, if they are invalid they are utterly without force or effect. As we have seen no such recognition of legality or validity has been accorded by our Government, and the converse is its policy and view. In *Moscow Fire Ins. Co.* v. *Bank of New York* (280 N. Y. 286, 298) the court said: " Until 1933 the government of the United States did not accord recognition to the Soviet Republic. The decrees of the Soviet government were completely effective in Russia, but *until recognition* the decrees of the government could.not be given here the force and effect of mandates of a *lawful* sovereign." (Emphasis mine.)

Therefore, the separate defense and basic claims relied on by the defendant to defeat a recovery by the plaintiff are untenable, and the previous decisions of this court are inapplicable and without ·effect with respect to the factual situation present in this case. It would be an anomalous situation indeed if we were to give recognition to the German laws and decrees, as effective in subjugated Austria, when our Government has refused to recognize the occupied territory as having been lawfully absorbed into the German Reich. It follows as a necessary corollary and legal sequence that the German laws and decrees can have no bearing or effect upon contracts made in Austria. (*Moscow* case, *supra; Amstelbank, N. V.,* v. *Guaranty Trust Co. of New York,* 177 Misc. 548, 552.)

Such defense necessarily assumes that with the invasion and conquest of Austria that Nation legally became a part of the German Reich; that thereupon plaintiff became a *German citizen* and likewise became a resident of Vienna, *Germany,* and hence · the contract was made in Vienna, *Germany,* and thus became subject to German laws and decrees, and so the defendant argues throughout. That this is an erroneous perspective is indicated by the fact that our Government has taken an opposite view.

Moreover, even if the German decree relied on was validly promulgated, and assuming also the above-stated premise to

be correct, it would not affect the plaintiff's right to recover, as the place of performance was to be in Holland or France, and such decree or German laws could have no extraterritorial effect on the matter of performance (*Myles* v. *Cuba R. R. Co.*, 182 Misc. 169, affd. 182 Misc. 175; *Kassel* v. *N. V. Nederlandsch Amerikaansche, etc.*, 177 Misc. 92, 93; *Lann* v. *United Steel Works Corporation*, 166 Misc. 465; *Pan-Am. Securities Corp.* v. *Krupp Aktiengesellschaft*, 169 Misc. 445, affd. 256 App. Div. 955).

Upon this appeal the defendant also advances other contentions not urged below and which may not be here considered for the first time. Even if considered they are without any force, as the defendant's refusal to perform was not predicated on any of those grounds; the sole ground given by the defendant was, according to plaintiff's uncontroverted testimony, that plaintiff's tickets were invalid, and that they could never again be used for passage. Having declared this to be the sole ground for refusing to perform, the defendant is deemed to have waived all others and cannot now be heard to urge some other reason.

The plaintiff proved a clear breach of contract by the defendant and plaintiff was entitled to recover. (*Cobb* v. *Howard*, Fed. Cas. No. 2925, affd. Fed. Cas. No. 2924; *Howard et al.* v. *The Astor Mutual Insurance Co.*, 5 Bosw. 38, 48; 58 C. J., Shipping, § 995, pp. 575, 576, and cases there cited.)

On the matter of damage there is no difficulty; plaintiff's damages are measurable and recoverable in terms of dollars for the reasons hereinbefore given; furthermore, the parties at the trial *expressly stipulated* that at the time of the breach the value of the things promised was $1,968; crediting the defendant with the sum of $234, the cost of the substituted passage furnished the children, plaintiff is entitled to a recovery in the sum of $1,734, with interest, for which judgment was properly rendered.

For the reasons stated I am unable to agree with the majority of the court and therefore dissent. The judgment should be affirmed, with costs.

McLAUGHLIN and HECHT, JJ., concur in *Per Curiam* opinion; EDER, J., dissents in opinion.

Judgment reversed, etc.